UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALLEN PARMENTER,

                Plaintiff,

     V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

08-CV-1132
(TJM/VEB)

## I. INTRODUCTION

In August of 2004, Plaintiff Allen Parmenter filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since August 1, 1996, due to mental illness. The Commissioner of Social Security partially denied Plaintiff's application.

Plaintiff, through his attorneys, Tobin & Dempf, LLP, R. Christopher Dempf, Esq. of counsel, commenced this action on October 21, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for DIB on August 16, 2004, alleging disability beginning on August 1, 1996. (T at 50-52).[1] The application was denied initially on February 5, 2005. (T at 33-35). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T at 36). A hearing was held in Albany, New York on July 11, 2006, before ALJ Joseph Gibbons. (T at 745). Plaintiff, represented by counsel, appeared and testified. (T at 745). On November 2, 2006, ALJ Gibbons issued a decision denying, in part, the application for benefits. (T at 24-30). Plaintiff filed a request for review of the portion of the decision that denied the application. (T at 7). The ALJ's decision became the Commissioner's final decision on August 26, 2008, when the Appeals Council denied Plaintiff's request. (T at 4-6).

Plaintiff, through counsel, timely commenced this action on October 21, 2008. (Docket No. 1). The Commissioner interposed an Answer on February 20, 2009. (Docket No. 5). Plaintiff filed a supporting Brief on August 24, 2009. (Docket No. 13). The Commissioner filed a Brief in opposition on October 8, 2009. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

proceedings.

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 1999. (T at 27).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, August 1, 1996. (T at 27).  The ALJ determined that Plaintiff had failed to submit any medical evidence establishing the existence of any medically determinable impairments prior to August 31, 1998, when Plaintiff was admitted to the psychiatric unit at Albany Medical Center. (T at 27).  As such, the ALJ found that Plaintiff did not met his burden of showing that he suffered from any medically determinable impairment or combination of impairments prior to that date.  (T at 27-28).

However, the ALJ did conclude that the evidence established severe impairments (schizoaffective disorder, schizophrenia, and substance abuse) as of August 31, 1998. (T at 28).  The ALJ further found that the severity of those impairments met the requirements

5

of §§12.04 and 12.06 of the Listings. (T at 28). The ALJ determined that, while Plaintiff was not disabled prior to August 31, 1998, he did become disabled on that date and remained disabled thereafter. (T at 29). According to the ALJ, Plaintiff's substance abuse was not a contributing factor material to the determination of disability. (T at 29). Thus, the ALJ found that Plaintiff was entitled to benefits, but as of August 31, 1998, rather than the alleged onset date of August 1, 1996. (T at 29-30). As noted above, the ALJ's decision became the Commissioner's final decision on August 26, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

### 2. Plaintiff's Claims

Plaintiff offers a single argument in support of his assertion that the unfavorable portion of the Commissioner's decision should be reversed. He contends that the ALJ and Appeals Council erred by finding insufficient evidence of disability during the period between August 1, 1986 and August 30, 1998.

Initially, this Court notes apparent confusion on the part of Plaintiff's counsel regarding the alleged onset date of disability. Plaintiff's DIB application indicated that he had been disabled since August 1, 1996. (T at 50, 68). Although Plaintiff stated that his condition first began to "bother" him on October 26, 1983, he indicated that he began unable to work because of the condition on August 1, 1996, following a nervous breakdown. (T at 61). This was the onset date used by the ALJ to conduct his analysis. (T at 15).

However, Plaintiff's counsel references two (2) different dates. First, counsel indicates that the alleged onset date is "August 1, 2996." (Plaintiff's Brief at p. 3). This is obviously a typographical error. Second, Plaintiff's counsel suggests an alleged onset date

of August 1, 1986 (Plaintiff's Brief, at p. 11) and points to evidence of disability from that period.

As set forth above, the administrative record clearly sets forth an alleged onset date of August 1, 1996. Accordingly, this Court's review will be limited to whether the ALJ and/or Appeals Council erred by finding insufficient evidence of disability with regard to the period between August 1, 1996 and August 30, 1998.

### a. ALJ's Errors

The ALJ noted that Plaintiff had "a lengthy psychiatric history apparently commencing in [*sic*] during his adolescence." (T at 18). Plaintiff was hospitalized in the psychiatric unit at Albany Medical Center from August 31, 1998, to September 7, 1998, for treatment with regard to severe psychiatric symptoms. (T at 18).

However, the ALJ concluded that "[p]rior to August 31, 1998," the date of admission to Albany Medical Center, Plaintiff "did not have any medically determinable impairments . . . ." (T at 17). The ALJ explained his decision as follows: Plaintiff did not have any medically determinable impairments prior to August 31, 1998, because "he has not furnished any medical evidence showing the existence of any impairments prior" to that date. (T at 17). Thus, "[s]ince the burden of proof rests squarely with the claimant to establish the existence of medically determinable impairments, and since claimant has completely failed to meet this burden prior to August 31, 1998 it is concluded that he did not suffer from any impairment or combination of impairments prior to that date . . . ." (T at 17-18).

The ALJ's reasoning in this regard is plainly deficient. The ALJ did not engage in the analysis required under the applicable authority. Specifically, SSR 83-20 requires the


ALJ to determine the onset date of disability and sets forth the standards and procedure for making that determination.[4] SSR 83-20 "imposes what might fairly be called heightened record-development duties." Plumley v. Astrue, 09-CV-42, 2010 WL 520271, at *8 (D. Vt. Feb. 9, 2010)(quoting Godsey v. Astrue, No. 08-410-P-S, 2009 WL 1873528, at *3 (D. Me. June 29, 2009)).  An ALJ rejecting a claimant's alleged onset date, has an affirmative obligation to "adduce substantial evidence to support [his or her finding]". Moses v. Sullivan, No. 91 Civ. 6980, 1993 WL 26766, at *4 (S.D.N.Y. Jan. 19, 1993).

SSR 83-20 defines "onset date" as "the first day an individual is disabled as defined in the [Social Security] Act and the regulations." The first step in determining the onset date is to assess whether the alleged impairment is of traumatic or non-traumatic origin.  The mental impairments in this case are of "non-traumatic origin."[5] Thus, under SSR 83-20, the "starting point in determining the date of onset of disability is the individual's statement as to when disability began." Here, as noted above, Plaintiff's statement is that the onset date was August 1, 1996. (T at 50, 61, 68).

The next step is to determine the date the impairment caused the claimant to stop work.  SSR 83-20 describes this date as "frequently of great significance in selecting the proper onset date."  As noted above, Plaintiff stated that he stopped working on August 1, 1996, after a nervous breakdown. (T at 61).  This statement appears to be supported by

---

[4] "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" Sullivan v. Zebley, 493 U.S. 521, 531, n. 9 (1990) (quoting 20 CFR § 422.408 (1989)).

[5] Plaintiff's mental impairments appear to be the result of horrifying sexual abuse suffered and witnessed by Plaintiff when he was very young. (T at 161, 261, 325-326).  As such, the impairments were, in a sense, induced by a trauma.  However, Plaintiff has not adopted this argument.  Rather, he has asserted that the impairments became disabling in 1996, many years after the abuse.

Plaintiff's earnings record, which indicates no earnings after 1996. (T at 59). The ALJ does not appear to have given any consideration to this fact.

SSR 83-20 next provides for consideration of medical evidence. The ALJ in this case adopted the position that Plaintiff was required to produce documents definitively demonstrating that his mental impairments were disabling during the period between August 1, 1996 and August 30, 1998. This position is contrary to SSR 83-20, which provides as follows:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

The Ruling further states that: in "determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." Again, the ALJ in this case does not appear to have considered or followed these requirements.

In sum, given the lack of precise evidence as to the onset of disability, the ALJ was required to infer the date of disability. This inference must be the result of "an informed judgment of the facts in the particular case." SSR 83-20. In particular, the ALJ is instructed to "call on the services of a medical advisor when onset must be inferred." SSR 83-20. "While SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step to be 'essential' when the record is ambiguous regarding onset date." Plumley, 2010 WL 520271, at *8 (collecting cases).

Moreover, the Ruling counsels particular caution where, as here, the claimant suffers

9

from mental illness. SSR 83-20 ("Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment. Contact with the individual's family, former employers, and other associates may lead to information about previous hospitalizations, medical treatment, or manifestations of symptoms prior to the current hospitalization.").

In this case, the ALJ's narrow focus on the lack of medical records from the period between August 1, 1996 and August 30, 1998 was inconsistent with the requirements of SSR 83-20 and constituted reversible error. See Felicie v. Apfel, No. 95 Civ. 2832, 1998 WL 171460, at *4 (S.D.N.Y. Apr. 13, 1998)(remanding because "[t]he ALJ's failure to follow SSR 83-20 constitutes legal error").

It is well-settled that the lack of contemporaneous medical evidence does not necessarily preclude claimant's entitlement to a period of disability. Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir.1989); see also Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir.1993) ("[L]ack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity."); Martinez v. Barnhart, 262 F. Supp.2d 40, 45 (W.D.N.Y. 2003)("[T]he absence of contemporaneous medical records does not preclude a claimant from otherwise demonstrating that he was disabled prior to the expiration of his insured status."); Miller v. Astrue, No. 03 Civ.2072, 2008 WL 2540750, at *10 (S.D.N.Y. Jun. 23, 2008)("Miller has no medical records for the time period between 1996 and 2001. There consequently are no contemporaneous records which can establish that she was disabled as of May 15, 1999. The absence of these records, however, does not preclude her from otherwise demonstrating th[at] she was disabled as of that date.").

A remand is therefore recommended. On remand, the ALJ should give careful consideration and attention to the requirements of 83-20 and should call on the services of a medical advisor and lay witnesses. In addition, Plaintiff's treating providers may be able to provide retrospective diagnoses that could aid the ALJ in determining the appropriate onset date. See Gibson v. Astrue, No. 07 Civ. 2845, 2009 WL 1181251, at *3 (S.D.N.Y. Apr. 30, 2009)("'To determine a medically-reasonable disability onset date for the [P]laintiff, the ALJ on remand should call on the services of a medical advisor and [appropriate lay witnesses],' and, '[a] convincing rationale should be given for the disability onset date that is chosen.'")(citations omitted).

### b. Appeals Council's Errors

Following the ALJ's decision, Plaintiff submitted an affidavit from James Gillaspie and a statement from Mark Steele. Mr. Gillaspie stated that he had known the Plaintiff since the mid-1980s. (T at 729). According to Gillaspie, Plaintiff was excitable, anxious, and unable to hold a job after being expelled from high school. (T at 729). He described a series of bizarre behaviors by the Plaintiff, including threatening Gillaspie with a knife. (T at 730-31). The Commissioner argues that Gillaspie's affidavit is irrelevant because it addresses primarily incidents from the mid-1980s, a decade before the alleged onset date. However, Gillaspie clearly states that, in his opinion, Plaintiff's "mental impairments originated during adolescence, continued into his 20's and continue to make it impossible for [him] to function in any competitive job setting." (T at 734). Mark Steele, who identified himself as a friend from Plaintiff's youth provided an unsworn statement indicating that Plaintiff ran away from home and exhibited other psychiatric symptoms in 1987. (T at 737-38).

11

This evidence was submitted to the Appeals Council (T at 3), which found that it did "not provide a basis for changing the Administrative Law Judge's decision." (T at 5). This Court finds that the Appeals Council erred in this regard.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

The evidence in question here was relevant to the ALJ's determination of the onset date and could have been considered for that purpose. Indeed, SSR 83-20 specifically provides for consideration of non-medical lay evidence, such as the Gillaspie and Locke

12

statements, when determining the onset date. SSR 83-20 ("Lay evidence usually relates to the individual's reasons for stopping work, activities since the alleged onset date, specific instances of abnormal behavior, and medical treatment history, if any. Such evidence should be evaluated in conjunction with the medical record to determine whether an earlier onset date can be established . . . Contact with the individual's family, former employers, and other associates may lead to information about previous hospitalizations, medical treatment, or manifestations of symptoms prior to the current hospitalization."); see also Arroyo v. Callahan, 973 F.Supp. 397, 399 (S.D.N.Y. 1997)("While medical evidence is central to the determination of the date of onset, other evidence, including work history and testimony from family, friends and former employers, must also be considered.").

    Consideration of lay evidence is particularly appropriate where, as here, the medical evidence regarding the onset of disability is lacking. See Mann v. Chater, No. 95 Civ. 2997, 1997 WL 363592, at *7 (S.D.N.Y. June 30, 1997) ("SSR 83-20 recommends that if evidence regarding the onset date of disability is missing, testimonial evidence from family, friends, and past employers should be elicited to augment the record ."); McCall v. Astrue, No. No. 05 Civ.2042, 2008 WL 5378121, 18 (S.D.N.Y. Dec. 23, 2008)(noting that "where reasonable inferences cannot be drawn from the available evidence and there is no other medical evidence available, the ALJ should also obtain evidence from family members, friends, and former employers"); Martinez, 262 F. Supp.2d at 47 ("[I]n the absence of medical evidence, the ALJ should have solicited other evidence from plaintiff's family, friends or other lay witnesses regarding plaintiff's condition during the relevant time period.").

    As noted above, the Commissioner contends that the information contained in the

statements is irrelevant because it does not relate to the period between 1996 and 1998. This argument is unavailing. First, the Gillaspie affidavit did reference a continuous and continuing disability and, thus, relates the disability to the period at issue. Second, the ALJ could have re-contacted these individuals or other lay witnesses to develop the record more completely regarding the relevant time period. Accordingly, this Court finds that the Appeals Council erred by failing to remit the matter to the ALJ for consideration of material evidence that could have influenced the ALJ to decide the matter differently. The statements of Gillaspie and Steele, along with other appropriate lay evidence, should be developed and considered on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   April 23, 2010

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 23, 2010

Victor E. Bianchini
United States Magistrate Judge